IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Kiril Zahariev, | ) C/A No.: 9:20-cv-01072-RMG-MHC |
| Plaintiff, | ) |
| v. | ) |
| Hartford Life and Accident Insurance Company, | ) PLAINTIFF'S MOTION TO REOPEN CASE ) AND SET ASIDE JUDGEMENT PURSUANT ) TO F.R.C.P. 60(b) |
| Defendant. | ) |

Plaintiff Kiril Zahariev ("Zahariev"), an individual, hereby moves this Honorable Court for order to reopen the case and set aside judgment. This brief is made and based on the papers and pleadings on file herein, and on the following Memorandum of Points and Authorities.

## I. BRIEF STATEMENT OF PERTINENT FACTS

This case arises from the termination of Plaintiff, Kiril Zahariev's long term disability (LTD) benefits during the "any occupation" period of his claim. Plaintiff had been on claim since July 14, 2016(with brief interruption between July and September 2018), until the termination of his benefits on October 31, 2019.
Mandatory mediation was conducted on October 15, 2020 by the Court appointed mediator Nicholas Felix Esq. (ECF 69). Prior to mediation, Plaintiff had filed Motion to Compel Production (ECF 71) and Motion to Lift Protective Order (ECF 77).
During mediation, Mr. Felix failed to adhere to the impartiality rightfully required from an attorney with his stature and deviated significantly from Local Court Civil Rules 16:10 (B) according to which:

The mediator shall set up the mediation conference. The mediator shall define and describe the following to the parties at the beginning of the conference: (1) **The process of mediation.** 17 (2) The difference between mediation and other forms of conflict resolution. (3) The fact that the mediation conference is not a trial; the mediator is not a judge, jury, or arbitrator; and the parties retain the right to trial if they do not reach a settlement. (4) **The inadmissibility of conduct and statements as evidence in any arbitral, judicial, or other proceeding**. (5) The circumstances under which the mediator may meet alone with either of the parties or with any other person. (6) Whether and under what conditions communications with the mediator will be held in confidence during the conference. (7) **The duties and responsibilities of the mediator and the parties.** (8) The fact that any agreement will be reached by mutual consent of the parties.

Mr. Felix never addressed (7) The duties and responsibilities of the mediator and the parties, (3) The fact that the mediation conference is not a trial; the mediator is not a judge, jury, or arbitrator; and the parties retain the right to trial if they do not reach a settlement, (2) The

difference between mediation and other forms of conflict resolution AND (4) The inadmissibility of conduct and statements as evidence in any arbitral, judicial, or other proceeding.

Instead, he used valuable mediation time(while waiting for opposing counsel), to recall how he started his legal career first clerking for his Papa, then his first appearance in Federal Court, when the Judge called him to the bench to ask him "aren't you the son of -----?".

Specifically, with regard to paragraph 4, Mr. Felix had made some inadmissible insinuations and direct accusations of Plaintiff, nothing short of coercion. (Naumova Declaration, Exhibit 1). Detailed e-mail thread was submitted to this Court in previous communications.

Finally, Mr. Felix violated several important statutes from "Standards of Conduct for Mediators"( taken from the Standards of Conduct for Mediators promulgated by the American Bar Association, the American Arbitration Association and the Society of Professionals in Dispute Resolution), available on https://www.sccourts.org/courtReg/arbmedb.html#1

## II. ARGUMENT AND AUTHORITY

FRCP Rule 60(b) provides that the court may relieve a party from a final judgment and sets forth the following six categories of reasons for which such relief may be granted: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly-discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59; (3) fraud, misrepresentation, or misconduct by an adverse party; (4) circumstances under which a judgment is void; (5) circumstances under which a judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. F.R.C.P. Rule 60(b)(1)-(b)(6). To be entitled to relief, the moving party must establish facts within one of the reasons enumerated in Rule 60(b).

Zahariev specifically alleges that he is entitled to relief under FRCP 60(b)(1), 60(b)(3) and 60(b)(6). Plaintiff, appearing *pro se*, approached the mediation process in good faith and confident that the Court appointed mediator would adhere to "Standards of Conduct for Mediators" set forth. However, much to his chagrin, Zahariev realized that Mr. Nicholas Felix Esq. was advocating on Hartford's behalf.

For example, the mediator effectively argued that Plaintiff should accept the discount rate suggested by Hartford, thus reducing the present value of future benefits almost in half. According to the mediator, it was a "sign of willingness to compromise". However, no such "willingness to compromise" was required from Hartford in reciprocal manner. This was premeditated action, since Zahariev had already produced evidence as to why Moody's Seasoned Corporated Bond Yield as of the time of mediation should be a starting point in deciding a discount rate. (*See* Naumova Declaration, Ex. 1).

Indeed, when discussing settlement of an LTD claim, either in the context of a buy-out offer or the settlement of a court case, LTD insurers typically present a calculation that reduces the stream of future benefits to present value. The discount factor applied by the carrier is typically 4% to 5%. The discounting of future benefits makes sense in the abstract. No one can argue with the general proposition that "a dollar today is worth more than a dollar in the future." The idea is that a claimant can earn a return by investing the lump sum settlement. If the justification for

discounting is the earnings the claimant can earn from investing settlement funds, one must consider the rate of return the claimant could realistically earn on a safe investment. One-year certificates of deposit are currently paying around 2.7% per annum. Five-year CDs, 3.1%. However, interest on CDs is taxable. If a claimant has a combined federal and state income tax rate of 25%, the after-tax yields on the one-year and five-year CDs are 2.03% and 2.33%, respectively.  Discounting can make a huge difference in the value of the claim when the claimant is young.

In the present case, Plaintiff is 48 years old, relatively young age, with potential benefits extending to 2038. By advocating on Hartford's behalf, the mediator drastically reduced the present value of future benefits and consequent settlement offer.

Furthermore, Mr. Felix asserted that "he believed ERISA settlement moneys is not taxable". By his false statements and biased assumptions he defrauded Plaintiff. In the recent case of *Braddock v. Comm'r.* UNITED STATES TAX COURT. Aug 24, 2016, the court held that:

The relief petitioner sought in his complaint was strongly causally connected with the denial by Lincoln National of his claim for long-term disability payments. Petitioner's action against Lincoln National filed in the U.S. District Court was based on the cause of action under 29 U.S.C. sec. 1132(a)(1)(B). That statute allows a person who is a beneficiary of or participant in a plan covered by ERISA to bring an action "to recover benefits due him under the terms of his plan,  to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan". Id. Essentially, this section allows a person who participates in or benefits from a plan (including disability insurance) that is subject to ERISA to bring a civil action to enforce the participant's or beneficiary's rights under the plan. Such rights may include payment of benefits. See *Corsini v. United Healthcare Corp.,* 51 F. Supp. 2d 103, 106 (D.R.I. 1999. The record shows that the payor's intent was to satisfy petitioner's claim for long-term disability benefits. Section 104(a)(2) does not allow the settlement income to be excluded from petitioner's income.

Several other tax courts have held that ERISA settlements are taxable and claimant is not exempt under Sec. 105(c) and 104(a)(2) respectively. See also *Mayberry v U.S.,* 151 F.3d 855 (8th Cir. 1998), the court held payments received in an ERISA settlement to be taxable wages. It was impossible for Zahariev to conduct an in depth examination and analysis of US Tax Codes <u>during</u> mediation and he was misled by the mediator's clearly erroneous assumptions. As such, he is now faced with heavy taxation of the settlement proceeds and Hartford has already reported the settlement to IRS on W2 as "third party sick pay".

Half way during the mediation conference, Zahariev realized this case was predetermined to be settled. Accordingly, on three occasions he attempted to end the mediation and leave, but was not allowed to do so, since the mediator had blocked the passage to the door. (See Naumova Declaration, Ex. 1).

In an unprecedented fashion, when Plaintiff declined certain settlement figure proposed by Hartford, the mediator barraged him with offences including "You are not disabled", "You can work from home as an Amazon representative" and "You can't or you won't accept the offer", among others. (Naumova Declaration, Ex.1).

This type of behavior is inexcusable for an officer of the court and court appointed mediator.

In fact, it represents the apogee of arrogance for certain breed of legal professionals and Mr. Felix is no exception. As an initial matter, Mr. Felix has no medical credentials and expertise to make assessments as to the medical condition of a claimant involved in an ERISA lawsuit. Second, he took a discriminatory approach against Plaintiff about whose medical history he knows absolutely nothing. It is a proven fact that, Plaintiff's Administrative Record (AR) including medical records spans over 5,000 pages.

Additionally, the mediator presented the consequences in case Zahariev doesn't settle- "someone in white uniform will come to your door and there will be more surveillance"(*Id.).*

As a Court appointed mediator, Mr. Felix had the duty to enforce paragraph #1 and 2 of *Standards of Conduct for Mediators*- I. Self-Determination: A Mediator Shall Recognize that Mediation Is Based on the Principle of Self-Determination by the Parties AND II. Impartiality: A Mediator Shall Conduct the Mediation in an Impartial Manner.

Clearly, Mr. Felix has failed the core duties and ethical conduct rightfully expected from him.

In addition, according to paragraph #6 of *Standards of Conduct for Mediators, VI.* Quality of the Process: * A mediator shall withdraw from a mediation when incapable of serving or <u>when unable to remain impartial.</u>

The fact Mr. Felix didn't withdraw from mediation after his unscrupulous remarks and attacks on Plaintiff, indicate his determination to settle the case at any cost.

What is of even greater importance is the fact he denied Plaintiff the right of self-determinaion and demonstrated his desire for high settlement rate.

Essentially, Mr. Felix conducted himself in a manner suitable for an adverse party and not for an impartial, court appointed mediator. His actions harmed the integrity of the judicial process. Fraud upon the court, as required to set aside a judgment under Rule 60(b)(3), has been defined as "only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." 7 J. Moore, W. Taggart J. Wicker, Moore's Federal Practice ¶ 60.33 at 515 (2d ed. 1990).

Courts have also held that where fraud is practiced upon a party to induce the party to enter into an agreement, and the wrongdoer intends that the court adopt that fraudulent agreement as part of a judgment, then there is fraud upon the court- *Burlington N. R. Co. v. Warren,* 574 So. 2d 758, 764 (Ala. 1990).

In this case, the Court can reasonably find that Felix had fraudulently induced the Plaintiff to enter into the settlement. That fraudulent inducement would support a finding of fraud upon the court when that fraudulent agreement was made the basis of the court's judgment and the dismissal of the case with prejudice.

During the mediation conference Mr. Felix took advantage of a *pro se* litigant. Justice has not been served in this case. Rule 60(b)(6), the catch-all provision, gives courts discretion to vacate or modify judgments when it is "appropriate to accomplish justice." *Klapprott v. United States*, 335 U.S. 601, 614-15 (1949).

Granting motions under Rule 60(b)(6) is limited to "extraordinary circumstances." *Gonzalez,* 545 U.S. at 535 ("[O]ur cases have required a movant seeking relief under Rule 60(b)(6) to show 'extraordinary circumstances' justifying the reopening of a final judgment.") (citing *Ackermann v. United States*, 340 U.S. 193, 199 (1950)). The D.C. Circuit has echoed that sentiment in observing that Rule 60(b)(6) motions "should be only sparingly used," *Good Luck Nursing Home, Inc. v. Harris,* 636 F.2d 572, 577 (D.C. Cir. 1980), and are not an opportunity for unsuccessful parties to "take a mulligan*." Kramer v. Gates,* 481 F.3d 788, 792 (D.C. Cir. 2007).

Here, Plaintiff is far from an attempt "to take a mulligan". On the contrary, during the course of his case, Zahariev had demonstrated his ability to navigate the murky waters of ERISA and make provocative motions, including his Motion to Conduct Discovery, Motion to Compel Production (ECF 71) and Motion to Lift Protective Order (ECF 77).

However, as indicated earlier, he was not prepared to face a corrupt officer of the Court, the Court appointed mediator Nicholas Felix Esq.

### III. CONCLUSION

Based on the foregoing, Zahariev respectfully requests that this Honorable Court reopens the case and sets aside judgement.
With his granted in part Motion to Conduct Discovery("Discovery Motion") and the two

outstanding motions, Motion to Compel Production (ECF 71) and Motion to Lift Protective Order (ECF 77), Plaintiff had Hartford pinned against the wall with very limited maneuverability. Coming to the mediation Plaintiff had no intent and desire to settle the case. In fact, his opening mediation statement focused on the uniqueness of his case and the factors which could make it a precedent in the Fourth Circuit.

Nicholas Felix Esq. vehemently advocated on Hartford's behalf and essentially saved the insurance company from public humiliation in court and significant financial damage. This case was predetermined to be settled. On Februay 2,2021, the mediator requested and his Firm authorized writing off of Plaintiff's account balance associated with this mediation.

DATED: February 5, 2021

Respectfully Submitted,

*Kiril Zahariev*
Kril Zahariev
15 Norris Ave
Bluffton SC 29910
tel. 843-757-5840